UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-61910-CIV-SINGHAL/VALLE

AMAURY IZQUIERDO, an Individual, and
MILADYS IZQUIERDO, an Individual,

    Plaintiffs,

v.

CERTAIN UNDERWRITERS AT LLOYD'S
LONDON SUBSCRIBING TO POLICY
NUMBER BB014330K-3830,

    Defendants.
_____/

## OPINION AND ORDER

**THIS CAUSE** is before the Court on Defendant's Motion for Summary Judgment, filed on August 19, 2022 (the "Motion") (DE [93]). Defendant filed an accompanying Statement of Material Facts that same day ("DSOF") (DE [94]). Plaintiffs filed a Response (DE [112]) and Responding Statement of Material Facts ("PSOF") (DE [113]) on September 12, 2022. Defendant filed a Reply on September 23, 2022 (DE [122]). The Motion is now ripe for this Court's consideration.

### I.   BACKGROUND

This action is an insurance coverage dispute in which Plaintiffs seek to recover the estimated costs to repair and replace their roof and interior due to alleged damage from Hurricane Irma. *See* Compl., at 4 (DE [1-2]). Defendant subscribed to Certificate No. BB014330K-3830, which was issued to Plaintiff Amaury Izquierdo for the period of March 31, 2017 through March 31, 2018 (the "Policy"). *See* DSOF ¶ 1; PSOF ¶ 1. The Policy provided insurance coverage for the property located at 19150 SW 58th Court, Southwest

1

Ranches, Florida 33332 (the "Property"), subject to terms, conditions, and exclusions. *See* DSOF ¶ 2; PSOF ¶ 2. The Policy provides up to $1,761,000 of coverage for the Property and generally provides coverage for direct physical damage. *See* DSOF ¶¶ 3–5; PSOF ¶¶ 3–5. The Policy does not include coverage for damage due to wear and tear, deterioration, mechanical breakdown, and faulty or inadequate design, construction, or maintenance. *See* DSOF ¶ 6; PSOF ¶ 6.

Under the Policy, Plaintiffs have the option to make repairs or make a claim on an actual cash basis. *See* DSOF ¶ 10; PSOF ¶ 10. If Plaintiffs make a claim on an actual cash basis, they can still elect to seek replacement costs as well, provided they "notify [the insurer], within 180 days after the date of loss, of [their] intent to repair or replace the damaged building." *See* DSOF ¶ 11; PSOF ¶ 11. Plaintiffs submitted a claim for alleged damage to the Property on October 3, 2017. *See* DSOF ¶ 12; PSOF ¶ 12. After adjusting the claim, Defendant tendered payment to Plaintiffs on May 9, 2018. *See* DSOF ¶ 13; PSOF ¶ 13. Plaintiffs assert they properly informed Defendant of their intent to repair or replace the damaged building within the 180-day window. *See* PSOF ¶ 14. Defendant disagrees. *See* DSOF ¶ 14.

On April 25, 2019, Defendant received a letter of representation from Plaintiffs' counsel advising Defendant that Plaintiffs disagreed "with the scope and actual cash value ("ACV") amount of [Defendant's] estimate" and demanded payment of $204,354.91. *See* (DE [94-4]). Defendants refused to pay this Demand, and Plaintiffs filed suit in state court for breach of contract under the Policy. *See* DSOF ¶ 16; PSOF ¶ 16; Compl. (DE [1-2]). Plaintiffs allege Defendant breached the Policy by failing to "provide coverage for the Loss under the terms of the Policy" and for failing to "make adequate payment of

2

insurance proceeds to the Insured." *See* DSOF ¶ 17; PSOF ¶ 17.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a));[1] *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" if a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law." *DA Realty Holdings, LLC v. Tenn. Land Consultants*, 631 Fed. Appx. 817, 820 (11th Cir. 2015).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position;

---

[1] The 2010 Amendment to Rule 56(a) substituted the phrase "genuine dispute" for the former "'genuine issue' of any material fact."

3

indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). "[T]his, however, does not mean that we are constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994).

### III.   DISCUSSION

Defendant contends summary judgment is proper on several grounds. First, Defendant asserts that Plaintiffs are limited to recovery of the actual cash value of damaged Property and that Plaintiffs possess no evidence probative of the actual cash value of the damaged Property. *See* Mot., at 8–10. Second, and by extension, Defendant contends it cannot have breached the contract by failing to have paid non-owed amounts for repairs or replacement. *Id.* at 10–11. Third, Defendant argues, Plaintiffs are unable to offer evidence of additional direct physical damage to the Property sustained during the Policy period. *Id.* at 11–14.

Plaintiffs respond that whether Plaintiffs are limited to recovery of the actual cash value of their damaged Property is a question of material fact not fit for resolution at this phase. *See* Resp., at 4–5. Plaintiffs contend they did notify Defendant within the 180-day post-Loss window of their intent to repair or replace the damaged Property. *Id.* Moreover, even if they did not, Plaintiffs argue they can prove the actual cash value of their damaged Property by using replacement cost value evidence. *Id.* Second, Plaintiffs assert that the issue of causation of Loss is a question of material fact not ripe for resolution. *Id.* at 6–7. Additionally, Plaintiffs argue they can prove causation through lay and expert opinion testimony at trial. *Id.*

### A. Notice of Intention to Repair or Replace Damaged Property

The Court first addresses whether Plaintiffs are limited to recovery of the actual cash value of the damaged Property. The Court takes judicial notice of the fact Hurricane Irma struck southeast Florida on or about September 10, 2017.[2] Plaintiffs submitted a claim under the policy for the damaged Property on October 3, 2017. *See* DSOF ¶ 12; PSOF ¶ 12. It is undisputed that, under the Policy, Plaintiffs could obtain repair or replacement costs so long as they "notif[ied] [Defendant], within 180 days after the date of loss, of [their] intent to repair or replace the damaged building." *See* DSOF ¶ 11; PSOF ¶ 11.

According to Defendant, Plaintiffs failed to notify Defendant of their intent to repair or replace the damaged Property within the applicable period. *See* DSOF ¶ 14. According to Plaintiffs, Plaintiffs did in fact notify Defendant of their intent to repair or replace the damaged Property within the applicable period because they "informed Defendant of an intent to seek replacement cost value . . . damages." *See* PSOF ¶ 14. To survive summary judgment on this issue, Plaintiffs must offer more than a mere scintilla of evidence such that a reasonable jury could find they notified Defendant of their intent to repair or replace the damaged Property within the applicable period. The Court finds Plaintiffs have failed to do so.

First, "inform[ing] Defendant of an intent to seek replacement cost value . . . damages" is different from "notify[ing] [Defendant] . . . of [an] intent to repair or replace the damaged building." Plaintiffs could intend to obtain replacement cost value damages without ever intending to use those funds to actually repair or replace the damaged

---

[2] National Weather Service, Hurricane Irma Local Report/Summary, https://www.weather.gov/mfl/hurricaneirma.

building. Thus, giving notice of an intention to obtain replacement cost value damages does not constitute giving notice of an intent to repair or replace the damaged Property.

Second, none of the portions from the record Plaintiffs cite support their assertion in the first place. The first cited evidence is a December 14, 2017 email between Monte Ponton (Defendant's independent adjuster) and Larry Graves (Defendant's third party administrator) (DE [104-2]). The Court does not see how this is probative of whether Plaintiffs notified Defendant of an intention to repair or replace the damaged Property. For one, the email is not sent from the Plaintiffs. Moreover, the substance of the email includes only a discussion of the adjuster's estimate and grounds in support thereof. *See* (DE [104-2]). The Court does not see how this could have any tendency to prove whether Plaintiffs notified Defendant of an intention to repair or replace the damaged Property.

Plaintiffs next cite a December 9, 2017 email between the same parties. *See* (DE [104-3]). Again, this email is not sent from Plaintiff and is thus not probative of notice from Plaintiff of an intent to repair or replace the damaged Property. This email shows a discussion between Defendant's independent adjuster and third-party administrator where the adjuster describes Plaintiff's roof as being over 20 years old and having lost less than 5% of its clay tiles. *See id.* Moreover, the adjuster speculates that Plaintiffs would dishonestly overstate their claims and effectively seek replacement of undamaged Property. *See id.* Thus, far from showing notice from Plaintiffs to Defendant of an intent to repair or replace the damaged Property, this email, if anything, could be probative of Defendant's concern regarding Plaintiff possibly submitting a fraudulent insurance claim.

Finally, Plaintiffs cite a portion of a transcript of the deposition of Brently Cuthbertson, Defendant's corporate representative. *See* (DE [104-1], at 24). This

deposition testimony describes a public adjuster's inspections and assessments of roof damage to the Property. Again, the Court does not see how this is probative of whether ***Plaintiffs notified Defendant*** of an intent to repair or replace damaged Property. Accordingly, the Court finds Plaintiffs cannot offer any record evidence to prove they notified Defendant of an intention to repair or replace the damaged Property within the applicable time window. Thus, Plaintiffs are limited to actual cash value recovery as a matter of law.

### B.  Actual Cash Value Damages

Defendant contends Plaintiffs have no evidence of the actual cash value of the damaged Property because their estimates are limited to costs to repair or replace the whole Property. *See* Mot., at 9–10. Plaintiffs respond that they can prove actual cash value by using replacement cost value evidence. *See* Resp., at 5–6; (DE [104], at 13–14). Plaintiffs argue Florida law's Broad Evidence Rule allows for admission of any evidence that logically could establish an estimate of damaged or destroyed property, including the wholesale cost, original purchase price, rental value, estimates, etc. For example, in *Worcester Mutual Fire Ins. Co. v. Eisenberg*, 147 So. 2d 575, 576 (Fla. 3d DCA 1962), "evidence of the wholesale cost of the destroyed merchandise . . . constitute[d] relevant evidence of actual cash value." *Id.* Plaintiffs further add that replacement cost value evidence is admissible by operation of other provisions within the Policy. *See* (De [104], at 14–15).

"The expression 'actual cash value' is an often-used appraisal term, generally synonymous with 'market value' or 'fair market value.'" *Am. Reliance Ins. Co. v. Perez*, 689 So. 2d 290, 291 (Fla. 3d DCA 1997) (citing *Black's Law Dictionary* 53 (4th ed.1968);

7

4 *Nichols on Eminent Domain* § 12.01, at 12–9 to 12–23 (rev.3d ed.1996); 2 *Words and Phrases,* "Actual Cash Value" 332–38, 117–19 (1955 & Supp.1996) (cases collected)). "Thus when [a] policy provides for 'actual cash value' it means 'fair market value,' which appraisal term is uniformly defined as 'the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the property is adapted and might in reason be applied.'" *Perez*, 689 So. 2d at 291 (citing *City of Tampa v. Colgan,* 163 So. 577, 582 (Fla. 1935); 4 *Nichols on Eminent Domain* § 12.02[1], at 12–62 to 12–70 (rev.3d ed.1996)). "[A]n allowance for actual depreciation is mandated as the cost approach by definition is the consideration of cost minus depreciation. The consideration of cost alone (without actual depreciation) would result in a figure in excess of fair market value (actual cash value)." *Perez*, 689 So. 2d at 291 (citing 5 *Nichols on Eminent Domain* § 20.01, at 20–2, § 20.04[1], at 20–13 (rev.3d ed.1996)).

First, the rule cited by Plaintiffs does not extend as broadly as they argue. Plaintiffs do not purport to offer wholesale costs, the original purchase price, the rental value, or other estimates going to the Property's fair market value. Rather, they seek to offer replacement or repair estimates to prove actual cash value. However, as Defendant points out, and as discussed in the preceding paragraph, replacement cost value wholly fails to account for depreciation and thus would come nowhere near logically establishing a fair market value estimate of the destroyed or damaged property.

Moreover, as Defendant also indicates, Plaintiffs do not limit their repair or replacement cost value estimates to the damaged Property, but rather to the Property as a whole—including the undamaged portions. The costs to repair or replace non-damaged

property could be available where required to comply with ordinances and laws. But, as Defendant explains, these costs are not available under the contract until after repairs are made. And in any case, they have no bearing on any determination of actual cash value. The Court therefore does not see what evidence Plaintiffs can offer that is probative of the actual cash value of the damaged Property. As such, Plaintiffs cannot prove breach of contract as a matter of law because they cannot prove Defendant failed to pay monies owed under the Policy. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment, (DE [93]) is **GRANTED**. The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions. Defendant shall submit a proposed final judgment in Word format to Singhal@flsd.uscourts.gov by October 25, 2022.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 17th day of October 2022.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF